**In re GLENN ELECTRIC SALES CORPORATION, Debtor.**

**Bankruptcy No. 87–07584.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 2, 1988.

Kleinberg, Moroney, Masterson & Shachter by Mary Ann Dubiel, for debtor.

U.S. Trustee by Novelyn Winfield, Asst. U.S. Trustee.

## OPINION

DANIEL J. MOORE, Judge.

This matter is before the Court upon a motion by the United States Trustee to disqualify and remove Kleinberg, Moroney, Masterson & Schachter, Esqs. (also referred to hereafter as "the Kleinberg firm") as counsel for the Debtor in Posses-

sion, and to compel said attorneys to return funds paid by the debtor as a retainer.

On December 15, 1987 the Kleinberg firm filed a bankruptcy petition under Chapter 11 on behalf of Glenn Electric Sales Corp., debtor. Attached to the debtor's petition as Exhibit "A" is the Certification of a partner in the Kleinberg firm which discloses the manner in which the debtor's attorneys were retained, to wit:

> 3... your petitioners have received the sum of $10,500.00 paid by Waage Electric, Inc., an affiliate of Power Instrument Corporation, a creditor of the debtor in the amount of $28,050.00. Waage Electric, Inc. has indicated to the debtor that it intents [sic] to be a proponent of a Plan of Reorganization. Waage Electric, Inc. has received or will receive a promissory note from Allen Glenn individually for the amount of the retainer payment.

Allen Glenn is the President and sole shareholder of the debtor corporation.

On the same day that the petition was filed, an Application and Order for Retention of Attorneys for Debtor-in-Possession were filed by the Kleinberg firm. The Application signed by the president of the debtor does not refer to or reveal the source of the retainer to the Kleinberg firm. The Application does, however, provide as follows:

> To the best of Applicant's knowledge, the firm of Kleinberg, Moroney, Masterson & Schachter, P.C. has no connection with the creditors or any other party in interest or their respective attorneys adverse to Applicant as Debtor-in-Possession, or the estate of the debtor and the matters upon which they are to be engaged, and their employment is believed to be in the best interest of the estate.

The Order Authorizing the Retention of Attorneys for Debtor-in-Possession was also entered on December 15, 1987.

Three months after the filing of the debtors' petition, the Kleinberg firm submitted a second certification[1] which indicated that

---

1. This certification dated March 14, 1988 was submitted to the Court as part of the Kleinberg firm's Brief in Opposition to the U.S. Trustee's Motion to Disqualify. The Certification appears as part of Exhibit "C" immediately following the

Order Authorizing Retention of Attorneys for Debtor-in-Possession. This placement of the exhibit is misleading. More appropriately, it should have been marked Exhibit "D" as the certification was not submitted or considered in

the Kleinberg firm accepted the retainer with the understanding that Allen Glenn was borrowing the sum of $10,500.00 from Waage Electric, which would then be loaned by Allen Glenn to Glenn Electric, Inc., debtor. According to the Certification, Allen Glenn was not listed as a creditor on the debtor's petition, but he reserved his right to file a proof of claim for the amount of this loan as an administrative expense[2]. Finally, the certification of the Kleinberg firm recites that it "does not and has never represented Allen Glenn, individually, Waage Electric, Inc. or Power Instrument Corp for any purpose."[3]

The debtor's position with respect to the payment to the Kleinberg firm is set forth in its responses to Questions 20a and 20b in the Statement of Affairs and the information set forth (or not set forth) in the Schedules filed (late) on January 29, 1988. The response to Question 20(a) reflects that the debtor consulted with the Kleinberg firm. The response to Question 20(b) reflects no payments to attorneys within the year preceding the petition. The Schedules are consistent with that position and reflect no obligation or debt to Waage Electric or Allen Glenn.

The above are the relevant facts in this matter and the following represents the court's findings of fact and conclusions of law.

\* \* \* \* \* \*

The U.S. Trustee maintains that the receipt of the retainer by the Kleinberg firm from either Waage Electric (Waage) or Allen Glenn (Glenn) disqualifies the Kleinberg firm. Furthermore, that neither Waage nor Glenn is a disinterested person and both hold interests adverse to the estate. The Kleinberg firm argues simply that the payment was considered to be a payment from the debtor. Alternately, the Kleinberg firm argues that even if the payment is deemed to come from a creditor or the holder of an equity interest, case law

supports the conclusion that no conflict exist as neither Waage nor Glenn have a materially adverse interest. Only the alternate positions need be considered, as it is clear from the Schedules and Statement of Affairs prepared by the Kleinberg firm and signed by Allen Glenn that the debtor did not pay the Kleinberg firm.

The relevant provisions of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, are Sections 327(a), (c) and (e), 1107(b) and 101(13) which provide as follows:

**§ 327. Employment of professional persons**

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) omitted.

(c) In a case under Chapter 7, 11 or 12 of this title, a person is not disqualified for employment under this section solely because of such person's employment or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an *actual conflict of interest.*

(d) omitted.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with

---

connection with the entry of the Order Authorizing Attorneys for Debtor-in-Possession. As indicated *supra,* the Application to retain the Kleinberg firm actually relied upon did not disclose the retainer arrangement.

2. As of the date of this opinion no claim has been filed by Allen Glenn.

3. The record does not contain any supporting certification from any of the named persons.

respect to the matter on which such attorney is to be employed.

(f) omitted.

## § 1107. Rights, powers, and duties of debtor in possession

(a) omitted.

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

## § 101. Definitions

\* \* \* \* \* \*

(13) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph or for any other reason;

The term "adverse interest" is not specifically defined in the Bankruptcy Code. However, the term has recently been described in this jurisdiction as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Star Broadcasting, Inc.* 81 B.R. 835, 838 (Bankr.N.J.1988) *citing In re Roberts,* 46 B.R. 815, 826–27 (Bankr.Utah 1985), *aff'd in part, rev'd and remanded in part on other grounds* 75 B.R. 402 (D. Utah 1987).

Subsection 101(13)(E) supra, is referred to as a "catch-all clause" and is broad enough to include anyone who in the slightest degree might have some interest or relationship that would distract from the independent and impartial attitude which is required by the Code. 2 *Collier on Bankruptcy 15th Ed.* paragraph 327.03(3)(F), *see also Nolan v. Judicial Council of the Third Circuit* 346 F.Supp. 500 (D.N.J.1972) *aff'd sub nom In re Imperial "400" Nat'l Inc.,* 481 F.2d 41 (3rd Cir.1973), *cert. denied,* 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973). This strict standard has been described as follows:

As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might in the view of the trustee or the bankruptcy court affect the performance of their services or which might impair the high degree of impartiality and detached judgment of them during the administration of the case.

*In re Star Broadcasting, Inc., supra,* at 840 *citing* 2 *Collier on Bankruptcy,* paragraph 327.03(3)(2).

Section 327(a) authorizes the trustee to employ professionals, however, only if such professionals "do not hold or represent an interest adverse to the estate" and are "disinterested person". Based upon the undisputed facts the court finds that the Kleinberg firm does not hold an interest adverse to the estate. Whether the Kleinberg firm represents "an interest adverse to the estate" or "are disinterested persons" requires a further review of relevant authorities.

One of the leading pre-Code cases on conflict of interest is *Woods v. City Nat. Bank & Trust Co.* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1940). In *Woods,* the Supreme Court held that claims for compensation in bankruptcy can be disallowed where the applicant was serving dual or conflicting interests. The Court reasoned that reasonable compensation for services rendered necessarily implied loyal and disinterested service in the interest of those for whom the attorney acted. *Woods* 312 U.S. at 268, 61 S.Ct. at 497, 85 L.Ed. at 825. The Court continued:

> Where a claimant ... was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted.

*Id.*

More recently, in the early 1980's, Honorable Jon J. Chinen, United States Bankruptcy Judge for the District of Hawaii, published a trilogy of cases pertaining to conflict of interest with an attorney for the debtor in bankruptcy. *In re WPMK, Inc.,* 42 B.R. 157 (Bankr.Hawaii 1984); *In re 765 Associates,* 14 B.R. 449 (Bankr.Hawaii 1981); *In re Bergdog Productions of Hawaii, Inc.,* 7 B.R. 890 (Bankr.Hawaii 1980). The attorney for the United States Trustee places heavy reliance on these cases in support of his motion for disqualification of the Kleinberg firm.

*In re Bergdog Productions of Hawaii, supra,* involved an application for compensation by the attorney for the debtor. The Court denied the application because the attorneys took payment from the stockholders of the debtor and obtained a guarantee of further payments from these individuals for services rendered to the debtor. The Court concluded that such a payment agreement placed the attorney for the debtor in a conflict of interest situation. *In re Bergdog Productions of Hawaii, Inc.,* 7 B.R. at 891. Citing the Supreme Court's decision in *Woods v. City Nat'l Bank, supra,* Judge Chinen stated "an attorney should not place himself in a position where he may be required to choose between conflicting duties." *Id.*

*In re 765 Associates, supra,* also involved an application for fees by the attorney for the debtor-in-possession. This attorney had received compensation from a corporation which was controlled by an individual who was both a general partner of the debtor and an owner of a corporate creditor of the debtor. Furthermore, the applicant had not obtained an Order of the court appointing him as attorney for debtor. The court stated that an attorney representing a debtor should not receive compensation from any of its creditors, directly or indirectly. *In re 765 Associates,* 14 B.R. at 451. The court held that the attorney for debtor was in a conflict of interest for, *inter alia,* the following reasons:

> The Court finds that when applicant agreed to receive and did receive compensation from a corporation controlled by an individual who was both a general partner of debtor and owner of a corporation which was creditor of debtor, such a situation posed a great temptation for the debtor's attorney to deviate from his duty of undivided loyalty to his client, the debtor.

*Id.*

In the most recent of the three cases, *In re WPMK, Inc., supra,* the court again summarized its feelings on the issue of conflict of interest concerning an attorney for debtor. The court also emphasized an attorney's duty to disclose compensation arrangements in interim fee applications. *In re WPMK, Inc.,* 42 B.R. at 161.

The Kleinberg firm relies on the case *In re Olson,* 36 B.R. 74 (D.Neb.1983), which presents a view which differs with the "Hawaiian trilogy", *supra.* In *Olson,* the Court considered an application for an Order *nunc pro tunc* approving employment of the attorneys for the debtor. The retention of such attorneys was objected to by a creditor in the case on the grounds that the attorneys held interests adverse to the estate and that each failed to qualify as "disinterested". The retainer was provided by Ted Olson Enterprises, Inc. (T.O.E.I.), a closely held corporation owned by the indi-

vidual debtor and his sons, which was also a creditor of the debtor. The court stated that while the relationship between T.O.E.I. and the attorneys was cause for concern "no specific advantage to T.O.E.I., injury to the estate, prejudice to other creditors or actual conflict arising from the advances is apparent from the record before the court". *In re Olson*, 36 B.R. at 76. The facts differ significantly in that payment was from a creditor related to the debtor. Indeed in *Olson* the assets of the T.O.E.I. were considered so intertwined with the debtor that the bankruptcy court enjoined actions seeking to repossess the assets of T.O.E.I. *Id.*

*Olson* appears to portray a new attitude towards the attorney for the debtor-in-possession where conflict of interest is concerned. One court has concluded the requirement in § 327(c) that there be an actual conflict of interest reflects the assessment by Congress that representation of a debtor's interest is not *per se* adverse to a secured creditor's interest. *See In re Martin*, 62 B.R. 943, 948 (D.Me.1986). Furthermore, it has been held that an attorney that has represented the debtor prior to the filing of bankruptcy proceeding, who had assisted in the preparation of the petition and who also was a major creditor, *without more*, does not have an interest adverse to the debtor. *In re Heatron, Inc.*, 5 B.R. 703, 705 (Bankr.Mo.1980).[4]

The case *In re Marine Power & Equipment, Co., Inc.*, 67 B.R. 643 (Bankr.Wash. 1986), provides a detailed analysis of issues which are presented to this court today. In that case, special counsel to the debtor-in-possession submitted an application for fees. A declaration filed in support of said application revealed that the attorney had represented an officer of the debtor corporation in addition to the debtor-in-possession. It was the opinion of the attorney in question that actions performed on behalf of the debtor would also benefit the debtor's principal. Despite this representation, the court denied the attorney's application for compensation in full because of said

attorney's failure to comply with standards relating to disclosure and dual representation at the time of his appointment. *Id.* at 654.

■ A serious question in this case is whether the Kleinberg firm adhered to its "duty of disclosure". There is no question that attorneys that seek employment under the Bankruptcy Code and who are aware that they may be involved in actual or potential conflicts of interest must disclose those facts to the court. *In re Marine Power & Equipment Co., Inc.*, 67 B.R. at 647; *In re Roberts*, 46 B.R. 815, 839 (Bankr.Utah 1985). Moreover, the court has no duty to search a file to determine for itself that a prospective attorney is not involved in actual or potential conflicts of interest. It is the attorney's duty to bring this to the attention of the court. *In re Roberts, supra*, at 839.

■ In this case, the Kleinberg firm maintains that there was full disclosure of the firm's relationship to creditors and potential creditors in its bankruptcy petition. However, the Certification attached as Schedule A of the original Petition recites conflicting facts. Compare the conclusion of paragraph 3 quoted on page 1 of this opinion with paragraph 2.

2. The firm of Kleinberg, Moroney, Masterson & Schachter has been retained *by the debtor* herein for the purpose of representation with respect to the filing of an Original Petition under Chapter 11 relating to bankruptcy. (emphasis added)

In any event, the potential conflict of interest was not disclosed in the firm's Application for Employment as Attorneys for Debtor-in-Possession. Bankruptcy Rule 2014 governs the employment of professionals and provides in pertinent part:

(a) Application for an Order of Employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of

---

**4.** This court will not follow *Heatron* which is more frequently distinguished and criticized than followed. *Heatron* and cases which follow

it appear to ignore the reiteration by Congress in § 327(e) of its attitude towards retention of a professional with an "adverse interest".

the Code shall be made only on application of the Trustee or Committee, stating the specific facts showing the necessity for employment, the name of the person to be employed, the reasons for the selections, the professional services to be rendered, *any proposed arrangement for compensation* and, to the best of the applicant's knowledge, *all of the person's connections with the debtor, creditors, or any other party in interest,* their respective attorneys and accountants ... (emphasis added).

The application of the debtor to employ the Kleinberg firm falls short of, did not comply with the requirements of Rule 2014 and was not true. Paragraph 5 of the Application prepared by the Kleinberg firm and by Allen Glenn, president of the debtor, states as follows:

"5. To the best of applicant's knowledge, the firm of Kleinberg, Moroney, Masterson & Schachter, P.C. has no connection with the creditors or any other party in interest or their respective attorneys adverse to applicant as debtor-in-possession, or the estate of the debtor in the matters upon which they are to be engaged, and their employment is believed to be in the best interests of the estate."

In addition, the Kleinberg firm failed completely to comply with the last sentence of Bankruptcy Rule 2014 which provides:

"The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants."

Certainly the Kleinberg firm is chargeable with knowledge of the rule and there is no doubt in the mind of the Court that the Kleinberg firm had actual knowledge of Bankruptcy Rule 2014.[5] After giving consideration to the facts, the court concludes that the Kleinberg firm breached its duty of disclosure in this case.

■ Applying the foregoing body of law to the facts of this case, the court concludes that the Kleinberg firm does not represent an interest adverse to the estate. The fact that Waage Electric, an affiliate of Power Instrument Corp. which is a creditor, loaned money to the principal of the debtor does not equate to representation of a creditor or potential proponent.[6] On the facts in this case, the payment of the retainer by the 100% shareholder does not equate to representation of that shareholder. Indeed, payment to a lawyer by one person to represent a different person is not uncommon.[7] Insurance carriers, prepaid legal plans, employers and parents. are examples of frequent third party payors. In so deciding the court is also mindful that the debtor and it's shareholders are separate entities, but believes that it would be completely unrealistic to conclude that the interest of the debtor corporation and its 100% shareholder would conflict in this case. Here, as in so many cases in which an individual affords himself of the opportunity to utilize the corporate entity, the interest of the corporation and its sole shareholders do not run divergent or even parallel courses, rather their interests go hand in hand.

---

**5.** On November 23, 1987, three weeks before this case was filed, the Kleinberg firm filed Chapter 11 petitions for Courtesy Container Corp. (Case # 87–07129M) and Courtesy Container Service, Inc. (Case # 87–07130M). The Applications for retention of counsel in each case have a "Statement Pursuant to Bankruptcy Rule 2014" attached.

**6.** Stephen Knee, Esq. of the firm of Stryker, Tams & Dill has entered an appearance in the case on behalf of Power Instrument Corp. Both Mr. Knee and his firm have an enviable reputation for their competency in the law and are well regarded by the Court.

**7.** It does not appear that the Kleinberg firm has violated the relevant rules of professional conduct applicable in the State and Federal Courts of New Jersey. R.P.C. 1.8(f) provides: "a lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation; (2) there is no interference with the lawyer's independence of professional judgment or with the lawyer-client relationship; and (3) information relating to representation of a client is protected as required by RPC 1.6."

What is left to be decided then, is whether the Kleinberg firm are "disinterested persons" as required by 11 U.S.C. § 327(a). Looking then, at the definition of "disinterested persons" set forth in 11 U.S.C. § 101(13), it is the opinion of the Court that the Kleinberg firm is disinterested pursuant to subparagraphs (A), (B), (C) and (D). The provisions of subsection (E) (supra p. 5), the U.S. Trustee argues, requires the removal of the Kleinberg firm. The "other" reason asserted here by the United States Trustee is that the Kleinberg firm accepted payment of its retainer from an affiliate of a creditor, or alternatively it accepted payment from the affiliate, who made the advance on behalf of the principal of the debtor, and therefore, the Kleinberg firm has a conflict. The United States Trustee argues, that since the payment came from a party that is not a disinterested party, that the Kleinberg firm is attorned to the interested person, and is therefore, itself, not a disinterested person as required by 11 U.S.C. § 327(a).

On the facts of this case the court is not willing to extend the statute to include as a disinterested party a professional who has been paid by an interested party to represent the debtor.

Of great concern, however, are the realities of Chapter 11. Most frequently, a successful plan depends on arms length negotiation and hard bargaining between the creditors and/or groups of creditors and the debtor. Not infrequently, however, a third party enters the picture as the proponent of a plan. The proponent could be anyone, including parties in interest. In that setting there is the struggle among the equity shareholders, the creditors, and the third party proponent. The equity holders are trying to salvage some part of their investment. Management is attempting to retain employment. Creditors are looking for as much as they can get, and the proponent is looking to spend as little as possible. Add to these negotiations, a fifth group, those with administration claims, and it is obvious there is much bargaining and negotiating, pulling and tugging. All one needs to do is add an additional ingredient, namely counsel for the debtor who has been paid by the principal of the debtor with monies advanced by the bargain hunter and the potential plight of the unsecured creditor is obvious.

Here the position of the U.S. Trustee has more merit. The Third Circuit Court of Appeals has expressed concern for the public image of the legal profession. Addressing their concern, the Court has stated that an attorney could be disqualified not only for acting improperly, but also for failing to avoid the *appearance* of impropriety. *Richardson v. Hamilton International Corporation*, 469 F.2d 1382, 1385–86 (3d Cir.1972). This requirement has been imposed in bankruptcy matters throughout the circuit. For example, the court in *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D.Pa.1982), stated:

> ... the avoidance of a real appearance of impropriety is of chief concern to a court of bankruptcy ... [I]t is not sufficient that the trustee and his counsel actually be disinterested; the appearance of interestedness must also be avoided ...

*Id.* at 335.

Furthermore, the concerns of the Judicial Counsel of the Third Circuit were expressed in *Nolan v. Judicial Counsel of Third Circuit, (Imperial "400"), supra.* In that case, a client of the attorney for the Trustee became the proponent of a plan of reorganization in a Chapter 10 case under the Bankruptcy Act. There the attorney for the Trustee recused from any negotiations in connection with that plan of reorganization. The client retained other counsel to represent it in the negotiations. The S.E.C. agreed with the manner in which the Court was approaching the potential conflict and no party in interest objected to the procedure. The Judicial Counsel determined that the attorney should be removed, not for cause, but rather because of the appearance of a conflict of interest. 346 F.Supp. at 504–506.

If the appearance of a conflict was present in *Imperial 400* it exists here even more so. Here the United States Trustee who is charged with the supervision of the administration of Chapter 11 case has

raised the objection of conflict of interest. The Kleinberg firm has filed a brief and a letter memorandum, the United States Trustee has filed a brief. The Court has scrutinized facts relative to the retention in detail and has also researched the applicable law. All of the foregoing was due, in part, to the necessity of reading three separate certifications to determine who the Kleinberg firm represented and the background thereof. Once the facts are known, however, the potential for conflict is clear. Even if the conflict never materializes there is the appearance of a conflict of interest. Although I am not able to cite the author, there is a saying to the effect that if it walks like a duck and talks like a duck then, in all likelihood, it's a duck.

In summary therefore, it is the holding of the Court that the retention of the Kleinberg firm must be terminated for the following reasons:

a. The application for the appointment of the Kleinberg firm as counsel for the debtors did not comply with Bankruptcy Rule 2014.

b. In this case the Kleinberg firm failed to fulfill its duty of disclosure. The Court, the United States Trustee, parties in the case and the public should not be required to review and reconcile several pleadings in a case to determine the nature of and facts relating to the retention of a professional.

c. The fact that a potential proponent of a plan, affiliated with the largest creditor of the debtor, provided the funds to sole stockholder of the debtor that were needed and used to retain a professional to represent the debtor creates (i) the potential for a conflict of interest and (ii) gives rise to the appearance of a conflict of interest.

d. It looks like a duck.

An appropriate order will be entered by the Court.

## ORDER TERMINATING THE EMPLOYMENT OF COUNSEL FOR THE DEBTORS.

This matter having come before the Court on the motion of the United States Trustee for the District of New Jersey, Delaware and Pennsylvania and good cause appearing;

IT IS on this 1st day of August, 1988 for reasons set forth in the opinion of the court filed this date;

ORDERED that the employment of Kleinberg, Moroney, Masterson & Schachter as Attorney for the Debtors, Glenn Electric is terminated effective this date; and it is further

ORDERED that the firm of Kleinberg, Moroney, Masterson & Schachter shall forthwith repay to Allen Glenn the amount of $10,000.00 paid on account of services to be rendered to the debtor in this case, said amount being the original retainer received from Glenn less the sum of $500.00 paid to the Clerk of the Court as the filing fee for this case.