Re:  **In re GLENN ELECTRIC SALES CORP.**

**Civ. A. No. 88–4248.**

United States District Court,
D. New Jersey.

Dec. 12, 1988.

Ann Dubiel, Kleinberg, Moroney, Masterson & Schachter, Millburn, N.J., for KMMS.

Joseph J. Mania, III, Office of U.S. trustee, Newark, N.J.

## OPINION AND ORDER

LECHNER, District Judge.

This matter involves an appeal from an order of Bankruptcy Judge Daniel J. Moore disqualifying the law firm of Kleinberg, Maroney, Masterson & Schachter, P.C. ("KMMS") as counsel for the debtor in possession, Glenn Electric Sales Corporation (the "debtor"), and ordering KMMS to return a $10,500 retainer previously received. KMMS asserts that the bankruptcy court committed errors of law and fact concerning the propriety of its conduct. The principal issue on appeal is the appropriate standard in this district for assessing whether an attorney for a debtor in interest should be disqualified.

### Standard of Review

Before reviewing the factual background of this case, it is important to clarify the applicable standards of review. A federal district court has jurisdiction to review decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a). *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 102 (3d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). Bankruptcy Rule 8013 states:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

While the bankruptcy court's factual determinations will not be set aside unless clearly erroneous, the district court may make an independent determination regarding matters of law. *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983) (bankruptcy court's findings of fact subject to clearly erroneous standard; legal conclusions subject to de novo review); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 331 (E.Pa. 1982).

### Background

The factual background of this case was set forth at length by Judge Moore in his opinion *In re Glenn Elec. Sales Corp.,* 89 B.R. 410 (Bankr.D.N.J.1988).

On February 16, 1988, the United States Trustee (the "Trustee") petitioned the bankruptcy court to disqualify and remove KMMS as counsel to the debtor and to compel return of the retainer KMMS previously received. The Trustee objected to the appointment of KMMS because of what he believed to be an improper method of compensation. KMMS received a retainer from a third party, Waage Electric, Inc. ("Waage"), an affiliate of Power Instruments Corporation ("Power Corp."). Power Corp. is a creditor of the debtor and Waage is a potential proponent of a Plan of Reorganization. *See* Transcript of Motion to Disqualify and Remove the Attorney for Debtor March 12, 1988 ("Tr."). In exchange for this financing, Allen Glenn, the president and sole shareholder of the debtor, was to give Waage a promissory note for the amount of the retainer payment to KMMS.

The Trustee argues that this arrangement creates an adverse interest on the part of KMMS. As Judge Moore indicated during the hearing, the practical consequence of this fee arrangement is to enable a principal of the debtor to borrow money from a creditor to pay the debtor's legal fees. Tr. at 3. The troublesome implication of this arrangement is the possibility that Power Corp., one of many unsecured creditors, will gain an unfair advantage over other creditors by dealing directly with the debtor and that Waage, as a po-

tential Plan proponent, may exert influence over the Chapter 11 proceedings. *Id.* at 5.

Judge Moore issued his opinion granting the Trustee's motion on August 2, 1988 and made the following findings: (i) KMMS breached its duty of disclosure by failing to disclose a potential conflict of interest in its application for employment; (ii) KMMS did not represent an interest adverse to the Chapter 11 estate; and (iii) KMMS was not a "disinterested person" within the meaning of 11 U.S.C. § 101(13) governing the employment of professionals in a bankruptcy proceeding.

On appeal, KMMS asserts that Judge Moore applied an incorrect legal standard in evaluating the law firm's conduct, failed to consider counterveiling equities in making his determination, and abused his discretion by disqualifying KMMS and directing return of the retainer.

*Discussion*

Rules of Professional Responsibility

■ An initial point of conflict between the parties is the appropriate legal rules and standards which govern the disposition of this case. Clearly implicated by the facts of this case is the professional conduct of KMMS. While the bankruptcy court did not explicitly refer to the American Bar Association Rules of Professional Conduct (the "ABA Rules") in its decision, these rules govern the conduct of members of the bar in federal court and hence may be considered when determining whether a conflict of interest exists in a law firm's representation of parties to a bankruptcy proceeding. *See In re Star Broadcasting*, 81 B.R. 835, 839 (Bankr.D.N.J.1988).

Pursuant to 28 U.S.C. § 151, the bankruptcy court is subject to the General Rules of the District of New Jersey (the "Local Rules"). Local Rule 6 states that the ABA Rules shall govern the conduct of members to the bar admitted to practice in the District of New Jersey.[1] Judge Rodriguez of the District of New Jersey recently examined the interaction of the Local Rules, ABA Rules and the amendments of the New Jersey Supreme Court and concluded that for purposes of reviewing a motion to disqualify counsel, the ABA Rules will be applied in this district. *See United States v. Walsh*, 699 F.Supp. 469, 472 (D.N.J. 1988).

As KMMS correctly points out, the ABA Rules have abandoned the concept of "appearance of impropriety" which is utilized in the Model Code of Professional Responsibility (the "Model Code") Canon 9. ("A lawyer should avoid even the appearance of professional impropriety.") KMMS argues that because Canon 9 has not been adopted in the District of New Jersey, the bankruptcy court improperly invoked this standard and consequently made erroneous conclusions of law concerning KMMS' disqualification. Reviewing the ABA Rules for specific ethical guidelines which may be relevant to this case, KMMS concludes that none of the ABA Rules have been breached. *See* Appellant's Brief at 9–11.

This observation, however, is not conclusive of the propriety of the bankruptcy court's legal analysis. For even if Judge Moore cited cases which referred to a standard not accepted in this district, his holding was based not only upon KMMS' disregard of Canon 9, but upon the rules of conduct as set forth in the Bankruptcy Code and Rules. Thus, while the Local Rules have explicitly directed New Jersey federal courts to utilize the ABA Rules, federal courts must also consider the standards articulated in the relevant statutes

1. JUDICIAL ETHICS AND PROFESSIONAL RESPONSIBILITY

The Rules of Professional Conduct and the Code of Judicial Conduct of the American Bar Association shall govern the conduct of the Judges and the members of the bar admitted to practice in this court.
D.N.J.Gen.R. 6.

Apparently there has been some confusion between the parties as to whether the ABA Rules

or the ABA Rules as amended by the Supreme Court of New Jersey govern this case.

The predecessor version of Local Rule 6 provided that the ABA Rules as amended by the Supreme Court of New Jersey were to govern the conduct of attorneys practicing before this court. It is noted that the present version of Rule 6 explicitly fails to incorporate these amendments. Accordingly, the ABA Rules apply unamended. *See Richards v. Badaracco*, 1988 W.L. 147152, n. 1, (D.N.J. June 27, 1988).

and the decisional law which has evolved in bankruptcy cases addressing the issue at bar: disqualification of counsel.

*Duty to Disclose*

Bankruptcy Rule 2014(a) imposes an affirmative duty on attorneys seeking employment under the Bankruptcy Code to disclose the manner in which they will be compensated. Prior to the recent amendments to the Bankruptcy Rules, which became effective August 1, 1987, Bankruptcy Rule 2014(a) stated:

(a) Application for and Order of Employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to Sec. 327 of the Code, shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and any proposed agreement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

The following sentence was added to Bankruptcy Rule 2014(a) by the 1987 Amendments:

The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

Although KMMS' application to the bankruptcy court was initially approved, the Trustee later brought to the attention of the court that there had not been compliance with the 1987 amendment.

■ Section 327 of the Bankruptcy Code provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327. Reading Rule 2014(a) in conjunction with Section 327, it is clear that any employment arrangements which implicate adverse or non-neutral interests must be brought to the attention of the court. *See In Re Roberts*, 75 B.R. 402, 410 (D. Utah 1987) ("Attorneys who request court approval of employment pursuant to § 327 of the Bankruptcy Code are under a duty to disclose actual or potential conflicts of interest which may bear upon their qualification as set forth therein.") This responsibility is especially important to insure that those conflicts of interest not immediately apparent are brought to the attention of the court reviewing a pro forma application for employment. The reviewing court has no duty "to search a file to determine for itself that a prospective attorney is not involved in actual or potential conflicts of interest." *In re Glenn Elec. Sales Corp.*, 89 B.R. at 415; *In re Roberts*, 46 B.R. 815, 839 (Bankr.D.Utah 1985), *aff'd in part, modified in part* and *remanded in part, In re Roberts*, 75 B.R. 402 (D. Utah 1987).

■ KMMS poses a variety of arguments to excuse its failure to comply with this disclosure requirement. Admitting that it overlooked the 1987 amendment requiring a verified statement, KMMS characterizes this omission as "purely technical" and denies that there was any effort made to deceive the court.[2]

2. KMMS has admitted that it failed to take notice of the specific amendment to Bankruptcy Rule 2014 requiring its own affidavit to be submitted at the time of retention. Noting that three weeks before *In Re Glenn Electric* was filed, KMMS filed two other Chapter 11 petitions in full compliance with Rule 2014 as amended, the bankruptcy court stated, "[T]here

is no doubt in the mind of the court that [KMMS] had actual knowledge of Bankruptcy Rule 2014." 89 B.R. at 416, 416 n. 5. In an attempt to contest this finding, KMMS states that the two other Chapter 11 petitions referred to by Judge Moore were filed by a different attorney from the firm. KMMS explains: "Therefore, actual knowledge of the amendment

The subjective good faith efforts of KMMS to comply with the Bankruptcy Rules are irrelevant. "If the duty to properly disclose is neglected, however innocently, the attorney performs services at his peril." *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). Due to the failure of KMMS to provide a verified statement of its relationship to Waage, its application for employment did not clarify the precise nature of the fee arrangement and did not reveal the potential for a conflict of interest. As a result, when the bankruptcy court initially approved the retention of KMMS, it was not aware that this fee arrangement created a relationship between KMMS and the debtor which required more extensive examination.[3]

In fact, as the bankruptcy court indicated, the application for employment submitted by KMMS affirmatively states that no such relationship exists.

> Paragraph 5 of the Application prepared by the Kleinberg firm and by Allen Glenn, president of the debtor, states as follows:
>
> "5. To the best of applicant's knowledge, the firm of Kleinberg, Maroney, Masterson & Schachter, P.C. has no connection with the creditors or any other party in interest or their respective attorneys adverse to applicant as debtor-in-possession, or the estate of the debtor in the matters upon which they are to be engaged, and their employment is believed to be in the best interests of the estate."

89 B.R. at 416. This statement directly contravenes the judgment of most courts that Rule 2014, which effectively implements 11 U.S.C. § 327, requires maximum disclosure of any "connection" which may cause divided loyalty. *In re Michigan General Corp.*, 78 B.R. 479, 483 (Bankr.N. D.Tex.1987).[4]

Although a verified statement outlining this relationship was attached to the debtor's petition as Exhibit "A" and filed by KMMS at the same time as the application to retain counsel, this clarification was not filed *with* the application as required by Rule 2014. The importance of this disclosure to a court's review of an application to retain counsel is well illustrated by the history of this litigation. That is, had the fee arrangement been brought to the attention of Judge Moore when KMMS first filed its application for employment, the application may well have been denied and the motion for disqualification obviated.

### Appearance of Impropriety

KMMS focuses its appeal on the bankruptcy court's reference to Canon 9 of the Model Code and its standard "appearance of impropriety." While the term "appearance of impropriety" as articulated in the Model Code is arguably not adopted in this

---

to Rule 2014 by Mr. Greenhalgh does not evidence actual knowledge of that Rule by Mr. Jacobson." Appellant's Reply Brief at 6. This argument is untenable and does not excuse noncompliance by the attorney who filed the Chapter 11 petition on behalf of Glenn Electric. As Judge Moore stated, a law firm is chargeable with knowledge of the law.

**3.** KMMS points out that when its application was filed it supplied a verified statement revealing the fee arrangement in accordance with the requirements of Bankruptcy Rule 2016 (then, Rule 219). Arguing that this should be considered the good faith equivalent of proper compliance with Rule 2014, KMMS contends that adequate disclosure was accomplished consistent with the policy objectives of the Bankruptcy Rules and 11 U.S.C. § 329. In fact, KMMS states that its compliance with Rule 2016 generated greater disclosure than that required by Rule 2014. Appellants' Reply Brief at 8. However, compliance with Rule 2016 does not excuse non-compliance with Rule 2014. "Proper and adequate notice is the most important element in all bankruptcy proceedings. In the context of an employment application, such notice, to be effective, requires disclosure. The disclosure must contain enough information as will reasonably convey the information required by 11 U.S.C. Secs. 327 and 329 and Bankruptcy Rule 2014 and 2016." *In re Automend, Inc.*, 85 B.R. 173, 179 (Bankr.N.D.Ga.1988).

**4.** Indeed, a breach of the requirements of Rule 2014 has been held to justify withholding attorney's fees after services have already been rendered. *See In re Flying E Ranch,* 81 B.R. 633, 637 (Bankr.D.Colo.1988) ("Where an attorney has failed to be forthright in disclosing potential conflicts of interest or disclosing his financial transactions or arrangements so that the court can make an informed judgment, denial of compensation has been recognized as being an appropriate remedy.")

district, this is not fatal to the bankruptcy court's order. Judge Moore's decision to disqualify KMMS rested upon the sound foundation of the Bankruptcy Code and Rules.

There is a two prong test for assessing the appointment of counsel for the debtor in possession in a Chapter 11 proceeding. Section 327 requires that the attorneys employed to represent the debtor must have no interests "materially adverse" to the estate and must be "disinterested persons" within the meaning of 11 U.S.C. § 101(13). *In re AOV Industries, Inc.*, 797 F.2d 1004, 1011 (D.C.Cir.1986). The bankruptcy court declined to conclude that KMMS represents an interest adverse to the estate: "The fact that Waage Electric, an affiliate of Power Instrument Corp., which is a creditor, loaned money to the principal of the debtor does not equate to representation of a creditor or potential proponent." 89 B.R. at 416. This finding, however, has no impact upon whether KMMS is disinterested.

Under Section 101(13), a "disinterested person":

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, and investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason:

While subparagraphs (A)–(D) are not applicable to this case, (E) is considered a "catch-all" provision and has been deemed broad enough to include anyone who "in the slightest degree might have some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Roberts*, 46 B.R. at 828 n. 26 (citing *Collier on Bankruptcy*). The span of Section 327 has also been interpreted to cover both actual and potential conflicts of interest. *Matter of Cropper Company, Inc.*, 35 B.R. 625, 631 (Bankr.M.D.Ga.1983) ("[E]ither prong of § 327(a) (adverse interest or disinterested person) requires an attorney employed by the debtor in possession to be free of ... actual *and potential* conflicts of interest." (emphasis added)).

Thus, the bankruptcy rules in and of themselves incorporate considerations which are the equivalent of Canon 9's "appearance of impropriety" standard. The bankruptcy laws prohibit not just actual conflict but also the *potential* for conflict which may be engendered by an attorney's representation of the debtor in possession. "There is no question that the purpose of the incorporation of the disinterest requirement in 11 U.S.C. § 327 was to prevent even the appearance of conflict irrespective of the integrity of the person or firm under consideration." *Matter of Codesco, Inc.*, 18 B.R. 997, 998 (Bankr.S.D.N.Y.1982); *see also In re Paolino*, 80 B.R. 341, 344 (Bankr.E.D.Pa.1987).

Although "mere insensitivity" to a potential conflict is not necessarily grounds for disqualification, *see In Re AOV Industries, Inc.*, 797 F.2d at 1009, a disinterested person "should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." *Matter of Codesco, Inc.*, 18 B.R. at 999. There should be neither an opportunity for the exercise of conflicting interests, nor even "the *appearance* that dual loyalty *may* exist." *Id.* at 999–1000 (emphasis added).

The term "interest" is not explicitly defined by the Bankruptcy Code and Rules. However, the case law illustrates the broad parameters of this concept. For the purposes of this case, a non-disinterested party is one who may have an economic or practical interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival. *See In re Roberts*, 46 B.R. at 827. Given the fee arrangement in this case, it is not at all clear that KMMS would be free of its "entangling associations"—monetary compensation—with Power Corp. and Waage. Accordingly, the bankruptcy court's finding that KMMS was not a disinterested person within the guidelines of the Bankruptcy Code and Rules was also not clearly erroneous.

### Balancing of Equities

KMMS suggests that a balancing of the equities disfavors its disqualification. Indeed, "[w]hen a motion is made to disturb a client's choice of counsel, the court is required to carefully exercise its discretion and to weigh all of the competing factors involved." *In re Iorizzo*, 35 B.R. 465, 468 (Bankr.E.D.N.Y.1983). Such factors as expense and delay are to be considered in this balance. *Id.* In favor of its position, KMMS cites the great expense and inconvenience which a change of representation will impose on both the debtor and the Chapter 11 proceedings. *See* Appellant's Brief at 24–25; Appellant's Reply Brief at 9–10.

Despite the likelihood that disqualification of KMMS will result in delay and may result in inconvenience to the progress of the Chapter 11 proceeding for Glenn Electric, the equities tip in favor of disqualification. Although no actual prejudice has been established in this case, there is sufficient risk that KMMS' exercise of professional judgment may be influenced by its fiduciary relationship with Power Corp. and Waage. Because of this possibility, KMMS is not "disinterested" as required by the law. As Judge Moore's discussion of the realities of Chapter 11 reveals, the importance of counsel's disinterestedness in these proceedings cannot be understated.

### Conclusion

Because KMMS failed to disclose the fee arrangement in this case and this arrangement presents a potential that KMMS will not execute its responsibilities as counsel for the debtor in possession in an impartial manner, KMMS is disqualified from representing the debtor in this action. The order of the bankruptcy court is affirmed.

SO ORDERED.