**In re HUNTMAR BEAUMEADE I LIMITED PARTNERSHIP, Debtor.**

**In re UMBRELLA ONE LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy Nos. 90–13203–AB, 90–11945–AB.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

May 31, 1991.

Nelson C. Cohen, Mark W. Foster, Barbara L. Ward, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for the debtor.

Jack I. Frankel, Office of the United States Trustee, Alexandria, Va.

Howard H. Stahl, Filiberto Agusti, Steven K. Davidson, Steptoe & Johnson, Washington, D.C., for Chase Manhattan Bank.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

On April 16, 1991, this Court took under advisement an Application for Authority to Employ Counsel Under a General Retainer filed on December 24, 1990 by Huntmar Beaumeade I Limited Partnership ("Huntmar"), as well as a similar application filed on January 17, 1991 by Umbrella One Limited Partnership ("Umbrella One"). For the reasons stated herein, this Court denies both applications.[1]

1. Because *In re Huntmar Beaumeade I Limited Partnership* (Case No. 90–13203–AB) and *In re Umbrella One Limited Partnership* (Case No. 90–11945–AB) are related in several respects, including by the fact that both involve applications to retain the law firm of Zuckerman, Spae-

In the Huntmar matter, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code was filed by Huntmar on December 7, 1990. Prior to Huntmar's filing of the petition, Stuart Gary ("Gary"), president of Huntmar's general partner, Huntmar Beaumeade I, Inc. ("Huntmar Inc."), retained the law firm of Zuckerman, Spaeder, Goldstein, Taylor & Kolker ("Zuckerman, Spaeder") to represent Huntmar in the bankruptcy proceeding.

Zuckerman, Spaeder, on instructions from Gary, contacted representatives of Dominic F. Antonelli, Jr. ("Antonelli") to arrange for payment of its retainer.[2] On December 7, 1990, a corporation controlled by Antonelli, Liquid Assets Corp., paid Zuckerman, Spaeder a retainer of $50,000.00.

On December 24, 1990, Huntmar filed an Application for Authority to Employ the law firm of Zuckerman, Spaeder as its bankruptcy counsel (the "Huntmar Application"). The Huntmar Application and related filings stated that:

(a) Liquid Assets Corp. paid Zuckerman, Spaeder a retainer of $50,000 for legal fees in this case;

(b) Liquid Assets Corp. is controlled by Antonelli who "has interests in" Huntmar; and

(c) there was no connection between Zuckerman, Spaeder and any creditors or other parties in interest.

On January 7, 1991, Chase Manhattan Bank ("Chase") filed an objection to the Huntmar Application and supplemented its objection on February 26, 1991. The United States Trustee filed an objection to the Application on February 14, 1991.

On April 10, 1991, Zuckerman, Spaeder disclosed that:

(1) Antonelli is an unsecured creditor of Huntmar with a claim of approximately $38,400.00;

(2) a partnership controlled by Antonelli has a 45% limited partnership interest in Huntmar; and

(3) Antonelli is a guarantor of a secured loan made to Huntmar by Chase.

Management Group Associates ("MGA"), a corporation controlled by Antonelli, has purportedly assumed *de facto* control of Huntmar and desires to replace Huntmar Inc. as the general partner of Huntmar. Liquid Assets Corp. has purportedly provided working capital necessary to operate Huntmar. However, neither MGA nor Liquid Assets Corp. is a general partner in Huntmar.

In the Umbrella One matter, Umbrella One's general partner, Umbrella Development Corporation ("Umbrella Corp."), retained Zuckerman, Spaeder in July 1990, to represent Umbrella One in litigation pending in the Fairfax County Circuit Court between Arthur Hamel Construction Company ("Arthur Hamel") and Umbrella One. On August 3, 1990, an involuntary petition for relief was filed by Arthur Hamel against Umbrella One in this Court and on December 10, 1990, an order for relief was entered.

In mid-December, Gary, executive vice-president of Umbrella Corp., instructed Zuckerman, Spaeder to contact representatives of Antonelli to arrange for payment of its retainer. On December 21, 1990, Zuckerman, Spaeder received a retainer payment of $25,000 from Liquid Assets Corp.

On January 9, 1991, Umbrella One, through its counsel, Zuckerman, Spaeder, filed its Schedule of Assets and Liabilities which lists Antonelli as an unsecured creditor with a claim of $6,000,000 (which amount was subsequently amended to $3,420,220).

On January 17, 1991, Umbrella One filed an Application for Authority to Employ the law firm of Zuckerman, Spaeder as its

---

der, Goldstein, Taylor & Kolker, and by the fact that such law firm received a retainer payment from the same source in both matters, we are deciding them together.

**2.** On January 17, 1991, an involuntary petition for relief was filed against Antonelli and his wife in the United States Bankruptcy Court for the District of Maryland, Rockville Division, and on February 14, 1991, an order for relief was entered in the proceeding.

bankruptcy counsel (the "Umbrella Application"). The Umbrella Application as well as information subsequently disclosed reveals that:

(1) Antonelli is an unsecured creditor of Umbrella One with a claim of approximately $3,420,220;

(2) an Antonelli created trust has a 45% limited partnership interest in Umbrella One; and

(3) Antonelli is a guarantor of a secured loan made to Umbrella One by Chase.

Both Chase and the United States Trustee filed objections to the Umbrella Application.

In analyzing this matter, we must first turn to Section 327(a) of the Bankruptcy Code which states that "the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are *disinterested* persons.... 11 U.S.C. § 327(a) (emphasis added).

The term "disinterested person" is defined by the Bankruptcy Code as "a person that—(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any reason." 11 U.S.C. § 101(13).

A treatise discussing the "disinterestedness" requirement observes that "[i]t appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." 2 *Collier on Bankruptcy* ¶ 327.03[f] p. 327–38 (1989).

■ Zuckerman, Spaeder, by receiving payment of its fees from a creditor of the debtors, is not "disinterested" as that term is used in Sections 327(a) and 101(13) of the Bankruptcy Code. *See In re Crimson Investments, N.V.*, 109 B.R. 397, 402 (Bankr. D.Ariz.1989) (proposed counsel to the debtor held not disinterested where it received prepetition and postpetition retainer payments from unsecured creditors of the debtor); *In re Glenn Electric Sales Corp.*, 99 B.R. 596, 602 (D.N.J.1988) (debtor's counsel's employment terminated because legal fees were indirectly provided by a party affiliated with debtor's largest creditor); *In re WPMK*, 42 B.R. 157, 163 (Bankr.D.Haw.1984) (a conflict of interest is presented where an attorney representing a debtor received compensation from a corporation that was controlled by an individual who was an owner of a creditor of the debtor). As the court in the *WPMK* case stated, "[a]n attorney representing a debtor should not receive payment, either directly or indirectly, from any of the creditors." *WPMK*, 42 B.R. at 163.

In both the Huntmar and the Umbrella One matters, the proposed counsel for the debtor is being paid by a creditor whose interests are directly adverse to those of the debtor. Where a creditor pays the legal fees of the debtor's attorney, the possibility that the attorney's loyalty may be divided is so significant that he cannot continue such representation. "It is no answer to say that fraud or unfairness were not shown to have resulted." *Woods v. City Nat'l Bank*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1940).

■ At the outset of the Umbrella One matter, Zuckerman, Spaeder knew that it was receiving retainer payments from its client's largest unsecured creditor, Antonelli, for services rendered as counsel to Umbrella One. Nevertheless, Zuckerman, Spaeder did not recognize, or decided to ignore, the conflict of interest, and elected to continue its representation of Umbrella One. Although Zuckerman, Spaeder asserts that in the Huntmar matter it did not realize that Antonelli was a creditor of Huntmar until early April 1991, because it knew of Antonelli's status as a significant creditor of Umbrella One, and that Antonelli had "interests in" Huntmar, the inescapable conclusion is that the law firm should have vigorously investigated the possibility that Antonelli was a creditor of Huntmar when it undertook the representation of such debtor.

■ Zuckerman, Spaeder contends that because of the purported inability of Umbrella One and Huntmar to pay their own

**366**

legal fees, this Court should grant the applications to retain Zuckerman, Spaeder, notwithstanding its receipt of retainer payments from a creditor of both debtors. In support of this position, Zuckerman, Spaeder urges this Court to follow *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987), where the court stated that, to determine whether a debtor's counsel is disinterested, the bankruptcy court should not apply a "per se" rule but rather should apply its "experience, common sense, and knowledge of the particular proceeding...." However, contrary to Zuckerman, Spaeder's assertion, "experience" and "common sense" dictate that we do not ignore conflict-of-interest standards set forth in the Bankruptcy Code and in relevant case law in favor of achieving an expedient solution to the debtors' purported shortage of financial resources.

For the foregoing reasons, the applications for authority to employ Zuckerman, Spaeder are denied because Zuckerman, Spaeder is not disinterested as required by 11 U.S.C. § 327(a). An appropriate Order will be entered.[3]

---

**3.** Because the applications are denied, it is unnecessary for this Court to address the United States Trustee's argument that Zuckerman, Spaeder failed to make a full and complete disclosure in the Huntmar matter of the relationship between Antonelli and Zuckerman, Spaeder as required by Bankruptcy Rule 2014.