**TWI INTERNATIONAL, INC.,**
**a Michigan Corporation, and**
**Thomas W. Itin, Plaintiffs,**

v.

**VANGUARD OIL AND SERVICE COMPANY, a New York Corporation, Kenneth Butler, individually, and Carl Willacy, individually, Defendants.**

**No. 84 Civ. 1665(CES).**

United States District Court,
S.D. New York.

Jan. 10, 1994.

Rosen & Miller by Kenneth N. Miller, New York City, for plaintiffs.

Tenzer Greenblatt Fallon & Kaplan by Charles E. Simpson, New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Charles E. Simpson of the firm of Tenzer, Greenblatt, Fallon & Kaplan moves to be removed as counsel for defendant Kenneth Butler. For the reasons that follow, the motion is granted.

## BACKGROUND

This case stems from an alleged breach of contract. In 1983, plaintiffs TWI International, Inc. and Thomas W. Itin (collectively "TWI") brought this action against defendants Vanguard Oil and Service Company ("Vanguard"), Kenneth Butler and Carl Willacy. Mr. Simpson represented the three defendants. The two individual defendants were allegedly the sole shareholders and principals of Vanguard: Butler was the president and Willacy was the executive vice president. First Am.Compl. ¶¶ 8, 9, 41(a); Answer to First Am.Compl. ¶¶ 8, 9.

On October 12, 1984, Vanguard filed a bankruptcy petition in the Eastern District of New York. Mr. Simpson is currently the Bankruptcy Court-appointed counsel to Vanguard, a position he has held since the bankruptcy filing. When Mr. Simpson applied to be bankruptcy counsel, he stated that his firm was "disinterested and, of course, would remain disinterested throughout the Chapter 11 proceeding." Simpson Aff. 9/22/93 ¶ 18.

As a result of the bankruptcy filing, the instant action against Vanguard was automatically stayed pursuant to 11 U.S.C. § 362(a). Nonetheless, this action continued against the individual defendants.

In August, 1986, the parties stipulated that if TWI did not receive payment of $375,000 from the Vanguard bankruptcy proceeding, they could immediately enter judgment for that amount against the three defendants in this case. Stipulation and Order 8/14/86 ¶ 3. The stipulation further provided that if payment was made, the parties would exchange general releases and the action would be discontinued. *Id.* at ¶ 5. However, the Court retained jurisdiction until such payment was made. *Id.* at ¶ 6. The stipulation was executed by Mr. Simpson as "Attorney for the Defendants." *Id.* at page 2. Although the stipulation was signed by Mr. Simpson on behalf of the defendants, he states in a recent letter to the Court that Willacy had passed away several months before the stipulation was executed.[1] Letter from Simpson to the Court of 4/13/93 at 2.

In September, 1990, the Vanguard plan was confirmed in the bankruptcy proceeding. Simpson Aff. 9/22/93 ¶ 5 n. 1. Pursuant to this plan, Butler has agreed to contribute a certain sum of money to Vanguard.[2] *Id.*

In March, 1993, TWI moved before this Court to enter judgment against the individual defendants. According to the accompanying affidavit, TWI had not yet received—nor was it likely that they would receive—full payment in the Vanguard bankruptcy proceeding.[3] Miller Aff. 3/24/93 ¶¶ 7–8.

TWI served their motion on Mr. Simpson. Shortly before the return date, Mr. Simpson wrote to the Court stating that he had refused to accept service of the motion. Letter from Simpson to the Court of 4/13/93. Mr. Simpson claimed he no longer represented the individual defendants and thus service on him on their behalf was improper. *Id.*

On June 29th, this Court ruled that Mr. Simpson was still the attorney of record for Butler.[4] Order 6/29/93. The Court based its decision on two facts: one, that the 1986 Stipulation provided that the Court would retain jurisdiction, and two, that Mr. Simpson had never moved to withdraw as counsel for the defendants, as required by General Rule 3(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. *Id.* The Court ordered Mr. Simpson to accept service of the TWI motion on Butler's behalf pursuant to Fed.R.Civ.P. 5.

More than two months later, Mr. Simpson for the first time raised the issue currently before the Court. Mr. Simpson indicated that since he was counsel for Vanguard in the bankruptcy court, he could not "represent Mr. Butler individually without an order of the Bankruptcy Court approving such representation." Simpson Aff. 9/9/93 ¶ 13. Thereafter, Mr. Simpson submitted a letter and affidavit that expanded on his contention. The Court is treating Mr. Simpson's letter and affidavit as a motion to withdraw as counsel for defendant Butler. TWI's counsel submitted an affidavit in response. Mr. Simpson never filed reply papers.

## DISCUSSION

▉▉▉ Mr. Simpson contends that if he were required to represent Butler he would not be disinterested in the Vanguard bankruptcy proceeding as mandated by 11 U.S.C. § 327(a).[5] Section 101(14)(E) defines a disinterested person as one who "does not have an interest materially adverse to the interest of the estate." 11 U.S.C. § 101(14)(E). Moreover, representing an interest adverse to the estate raises identical considerations.

1. Mr. Simpson also acknowledges that in August of 1986 he made a special appearance on behalf of Butler in the Vanguard bankruptcy proceeding. Letter from Simpson to the Court of 4/13/93 at 2.

2. It is unclear who, if anyone, represented Butler at the time that he agreed to contribute to the Vanguard plan.

3. Indeed, Mr. Simpson acknowledges that the distribution to TWI will not total $375,000. Simpson Aff. 9/22/93 Ex. A (Letter from Simpson to Butler of 9/14/93).

4. Since Willacy apparently passed away, Mr. Simpson could no longer be considered his attorney.

5. This section provides:

    (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

    11 U.S.C. § 327(a).

*Roger J. Au & Son, Inc. v. Aetna Insurance Company,* 64 B.R. 600, 604 (Bankr.N.D.Ohio 1986). Although "adverse interest" is not defined by the Bankruptcy Code, courts have held that to hold an interest adverse to the estate means: "to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr.D.N.J.1988).

▆▆▆▆ Given these parameters, courts hold that the determination of "disinterestedness" is a fact specific inquiry. *In re BH & P Inc.,* 949 F.2d 1300, 1315 (3rd Cir.1991). Moreover, "merely hypothesizing that conflicts may arise is not a sufficient basis to warrant the disqualification" of an attorney. *In re Stamford Color Photo, Inc.,* 98 B.R. 135, 138 (Bankr.D.Conn.1989). Rather, "[d]isqualification should be mandated when an actual, as opposed to hypothetical or theoretical, conflict is present. This in no way precludes disqualification for a potential conflict. The test is merely one of a potential actual conflict." *In re Wm. J. O'Connor,* 52 B.R. 892, 897 (Bankr.W.D.Okl.1985). Consequently, an attorney that represents a corporation in bankruptcy and its principal is not per se interested. *See In re Hurst Lincoln Mercury,* 80 B.R. 894, 895 (Bankr.S.D.Ohio 1987) ("It is fundamental that simultaneous representation of a corporation and its sole stockholder is not in and of itself improper").

As noted, Mr. Simpson represented Butler both before and after Vanguard filed for bankruptcy in 1984. After Mr. Simpson's 1984 appointment as counsel to Vanguard in the bankruptcy proceeding, he continued to represent Butler in the instant case for nearly two years. In August 1986, Mr. Simpson appeared on Butler's behalf in the Vanguard bankruptcy proceeding. Letter from Simpson to the Court 4/13/93 at 2. Thereafter, Butler agreed to contribute a certain sum of money to Vanguard in bankruptcy proceeding.[6]

After the time that Butler agreed to make this contribution, Mr. Simpson's representation of him in any action would have been—and would be—inappropriate. Specifically, Mr. Simpson's representation of Butler could put him in the stance of advocating a position that would decrease the value of the bankruptcy estate. For example, if Mr. Simpson were to negotiate a settlement in the instant case in which his client agreed to make payments to TWI, Butler possibly would be unable to make his contribution to the bankruptcy estate. In such a case, Mr. Simpson would be asserting an "economic interest that would lessen the value of the bankruptcy estate," *In re Star Broadcasting, Inc.,* 81 B.R. at 838, and thus would not be disinterested. In sum, the Court concludes that there is a "potential actual conflict" if Mr. Simpson were to represent Butler in this action. *In re Wm. J. O'Connor,* 52 B.R. at 897. The motion is therefore granted.

### CONCLUSION

Mr. Simpson's motion to withdraw as counsel is granted on the condition that he provide Butler—by overnight mail within one week of the date of this order—with a copy of this order and a copy of the motion papers served by TWI. Mr. Simpson shall also notify Butler that he will withdraw as counsel. Finally, Mr. Simpson shall notify Butler that he is to retain new counsel who must file and serve opposition papers to the TWI motion within three weeks of the date of this order. Mr. Simpson shall promptly file an affidavit with this Court indicating that he has complied with these conditions.

TWI shall file reply papers one week after the date that Butler's new counsel has served opposition papers.

SO ORDERED.

---

**6.** As noted, it is unclear who, if anyone, represented Butler in the bankruptcy proceeding at the time that he agreed to contribute moneys to Vanguard. The Court presumes that Mr. Simpson did not, given the position he takes on this motion. If, however, Mr. Simpson did formally or informally represent Butler during these negotiations, he is directed to supplement the record in this action within one week from the date of this order with a statement as to when, how long and under what circumstances such representation occurred.